PAPANASTASOPOULOS *v.* ZISSIS.

1. Breach of Marriage Promise—Weight of Evidence.

In an action for breach of marriage promise, a verdict for plaintiff under conflicting testimony, *held,* not against the great weight of the evidence.[1]

2. Same—Excessive Verdict.

In such action, a judgment of $6,500, reduced from a verdict of $20,000, where defendant admitted the value of the business owned by himself and brother was $40,000 and that his income for one year was $7,500, *held,* not excessive.[2]

Error to Wayne; Dingeman (Harry J.), J. Submitted January 5, 1926. (Docket No. 14.) Decided March 20, 1926.

Assumpsit by Penelope Papanastasopoulos, an infant, by her next friend, against Zissis Zissis for breach of promise to marry. Judgment for plaintiff. Defendant brings error. Affirmed.

*William Henry Gallagher,* for appellant.

*James R. Neill* and *Frederick S. Baker,* for appellee.

Snow, J. Plaintiff had verdict against the defendant for $20,000 for breach of promise to marry. This verdict was reduced by the trial judge to $6,500. The only error urged is the refusal to grant a new trial for the reasons, *first:* That the verdict is against the great weight of the evidence, and *second:* That it is excessive. While we have carefully examined the record, which is voluminous, it will be unnecessary herein to more than refer to the more important events

---

[1]Appeal and Error, 4 C. J. § 2838. Breach of Marriage Promise, 9 C. J. §§ 78, 91; [2]Breach of Marriage Promise, 9 C. J. § 102.

Excessiveness of damages for breach of promise to marry, see note in 41 L. R. A. (N. S.) 853.

in an effort to determine whether or not the verdict should be disturbed for the reasons assigned by the defendant.     The parties are both natives of Greece. Plaintiff came to Detroit from her native land in September, 1921.     The defendant had been in Detroit for some time previous, and was engaged in the fur business with his brother under the firm name of Zissis Brothers.     Plaintiff's brother worked for defendant, who frequently visited him at his home. Testimony was offered by the plaintiff to the effect that on one of these visits defendant saw a picture of her and admired it, and that he urged her brother to bring her to the United States, and stated that if he was favorably impressed he would marry her. After plaintiff arrived in this country she came to live with her brother in Highland Park, and there defendant met her.     They became friendly, he took her for automobile rides and to places of amusement and embraced her many times.     Plaintiff further claims that in September, 1922, the defendant asked her to marry him, saying he had obtained her brother's permission, and she accepted his proposal and it was arranged they would be married the following June.     Plaintiff also claims that in March, 1922, after defendant had had dinner at her house, he asked her to go to the Addison hotel to dance, but that instead he took her to a hotel on Second boulevard where he lived; that they went up to his room on the third floor where he embraced and kissed her and forced her to have sexual relations with him, which caused her to become pregnant.     She claims he took her home at 3 o'clock in the morning, where he admitted to her sister-in-law what he had done, and promised her he would marry plaintiff.     She claims she consulted physicians later to find out her condition, and when defendant believed she was pregnant he told her to drown herself, although he had been protesting along that he would marry her.

She was corroborated in much of her testimony by others.  Her sister-in-law, Angeline Populos, testified to the occasion when it is claimed defendant brought her home after having ravished her.  She testified defendant cried and told her he had forced the plaintiff and that he would marry her, and not to tell her brother about it.  He told her not to worry about the plaintiff being pregnant as the marriage would fix everything all right.  Her brother also corroborated her testimony as to the desire of defendant to have her come to the United States, and his activities in getting her here.  He testified to the affection of defendant for plaintiff, and that defendant told him he would marry her if he were given permission to take her out when he wanted to.

The defendant denied practically all of the material things testified to by plaintiff and her witnesses.  He disclaimed any interest in or love for the plaintiff; denied he ever promised to marry her or urged that she be brought to this country; denied he saw her picture until after her arrival; denied he took her automobiling or to places of amusement or ever demonstrated any affection for her.  He admits calling at her house to take her to the Addison, but says he did so at her invitation.  He admits they went to his hotel and to his room and had sexual intercourse, but he insists it was with her consent, and that at no time did she object or protest, nor was he required to use any force whatever.  He claims she made improper advances to him and told him of improper relations she had with other men.  He claims that before the plaintiff came to this country her sister-in-law told him she was going to marry her to Harry of the El-Roy Lunch.

Defendant offered testimony of other men who visited plaintiff at her home during the time she claims she was keeping company with defendant; also testi-

mony that plaintiff had told others of her affairs with other men; also testimony of her immodest behavior on the boat coming over, and her statements that she had a man in Athens she was going to marry; that she had told she did not intend to marry the defendant, and that she had a sweetheart by the name of John Fix, and had spent the night with him, and that he had loved her, and showed a picture of herself in a night gown, and that she had other lovers. Defendant also offered testimony to the effect that she had admitted she was not forced by defendant; that she told she had a miscarriage as a result of her intercourse with the defendant. Testimony was also offered of other acts of impropriety by the plaintiff, and facts were testified to that were inconsistent with the claim of the plaintiff.

The above, in substance, is the testimony bearing upon the respective claims of the parties. Defendant's counsel, in his brief, ridicules the plaintiff's testimony and points out that her conduct was not consistent with her claims. While this argument was proper here, under the assignments of error, it was also for the jury and was doubtless indulged in in full measure upon the trial of the case.

A careful and complete consideration of the record gives us no room for concluding that the verdict is against the great weight of the evidence, and we are impelled to the same conclusion arrived at by the learned trial judge which he states in his opinion on the motion for a new trial in the following language:

"There are many inconsistencies in the testimony of the plaintiff and she is contradicted in many particulars by the defendant. It is difficult to reconcile some of her testimony with the testimony of reputable and disinterested witnesses sworn by the defendant. The discrepancies, however, have to do with collateral matters and incidents bearing upon her claim of rape, and the pregnancy which she claims resulted. On

the claim that defendant promised to marry her, she is corroborated by her brother and sister-in-law, and while it is said that these witnesses are not worthy of belief, their credibility was a question for the jury. The court is not impressed that the verdict is against the weight of the evidence on the main issues in the case."

Is the verdict excessive? This case was twice tried before a jury. The first verdict was in the sum of $15,000. A new trial on the ground of newly-discovered evidence was granted, and on the second trial the jury found for the plaintiff a verdict in the sum of $20,000, which was reduced to $6,500 by the trial court. The jury was instructed very plainly that the question of damage for the alleged assault upon her must not be considered as she had a separate cause of action therefor. But for fear the instructions may have been ignored a most substantial reduction in the amount of the verdict was made. Defendant admitted he and his brother had a business worth $40,000, and that in 1922 his income was $7,500. Some evidence was also offered to the effect that defendant had claimed he was worth $100,000. It cannot be said the verdict was excessive.

Judgment affirmed, with costs to plaintiff.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.